AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the
District of Colorado

| | |
|---|---|
| In the matter of the search of Information ) | |
| Associated with TextNow accounts: ) | Case No. 20-sw-01514-SKC |
| (1) garygivens001 ) | |
| (2) johnsebastian1759, ) | |
| that are stored at premises controlled by ) | |
| TextNow, Inc. located at 2710 Gateway Oaks ) | |
| Drive, Suite 150N, Sacramento, CA 95833, ) | |
| more fully described in Attachment A, attached | |
| hereto. | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE "ATTACHMENT A"**, which is attached to and incorporated in this Application and Affidavit

located in the_____Eastern_____District of_____California and elsewhere_____, there is now concealed *(identify the person or describe the  property to be seized)*:

**SEE "ATTACHMENT B"**, which is attached to and incorporated in this Application and Affidavit

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 371 | Conspiracy; |
| 18 U.S.C. § 1343 | Wire Fraud; |
| 18 U.S.C. § 1956 | Money laundering |

The application is based on these facts:
- ☒ Continued on the attached affidavit, which is incorporated by reference.
- ☐ Delayed notice of_____days (give exact ending date if more than 30 days:_____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*s/John P. McGrath*
*Applicant's signature*

FBI Special Agent John P. McGrath
*Printed name and title*

Sworn to before me and:  ☐ signed in my presence.
☒ submitted, attested to, and acknowledged by reliable electronic means.

Date:  12/18/2020

_____
*Judge's signature*

City and state:  Denver, CO

Magistrate Judge S. Kato Crews
*Printed name and title*

**<u>ATTACHMENT A</u>**

**Property to Be Searched**

This warrant applies to information associated with the following TextNow accounts that are stored at premises owned, maintained, controlled, or operated by TextNow, Inc., a service provider headquartered at 420 Wes Graham Way, 2nd Floor, Waterloo, Ontario N2L 0J6, Canada and with an office that accepts legal process from the United States Government located at 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA:

   (1) garygivens001
   (2) johnsebastian1759

## <u>ATTACHMENT B</u>

### Particular Things to be Seized

**I.**     **Information to be disclosed by TextNow, Inc**

To the extent that the information described in Attachment A is within the possession,

custody, or control of TextNow, Inc. (TextNow), regardless of whether such information is

located within or outside the United States, including any messages, records, files, logs, or

information that have been deleted but are still available to TextNow, or have been preserved

pursuant to a request made under 18 U.S.C. § 2703(f), TextNow is required to disclose the

following information to the government for each account or identifier listed in Attachment A:

**Timeframes required to disclose information for each TextNow account:**

(1)   garygivens001                    April 17, 2020 to present
(2)   johnsebastian1759             August 12, 2020 to present

a.     All voicemail, text, and multimedia messages stored and presently contained in,

or on behalf of the account or identifier;

b.     All existing printouts from original storage of all the text messages described

above;

c.     All transactional information of all activity of the device(s) and/or voicemail

accounts described above, including log files, messaging logs, local and long

distance telephone connection records, records of session times and durations,

dates and times of connecting, methods of connecting, telephone numbers

associated with outgoing and incoming calls, cell towers used, and/or locations;

d.      All text messaging logs, including date and time of messages, and identification numbers associated with the device sending and receiving the message;

e.      All business records and subscriber information, in any form kept, pertaining to the individual accounts and/or identifiers described above, including subscribers' full names, addresses, shipping addresses, date account was opened, length of service, the types of service utilized, ESN or other unique identifier of the device associated with the account, Social Security account number, date of birth, telephone numbers, email address, and other identifiers associated with the account;

f.      All payment information, including dates and times of payments and means and source of payment (including any credit or bank account numbers;

g.      Incoming and outgoing telephone numbers and all forms of electronic communications;

**II.     Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and/or instrumentalities of violations of Title 18 United States Code Sections 371 (conspiracy) 1343 (wire fraud) and 1956 (money laundering), including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a.  Evidence indicating how and when the TextNow account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the TextNow account owner;

b.  Evidence indicating the TextNow account owner's state of mind as it relates to the crime under investigation;

c.  The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s);

d.  The identity of the person(s) who sent and/or received communications from the TextNow user accounts  garygivens001, johnsebastian1759 and any connected telephone numbers;

e.  Any and all electronic communications related to individual(s) responsible for or involved in a conspiracy or scheme to launder monies, defraud individuals and/or conceal an individual's identity;

f.  Any and all electronic communications related to Abriele Kosin, Daro Kosin, , Ayodele Fasanya, Adebayo Fasanya, Asha Halverson, Usman Salawu, Andrew Hansen, Dioli Guarneri, James Morris, James Lawson, James Vlaar, Gary Givens, John Sebastian, Christina Montee,  and Casper Forbes;

g.   Any records relating to any entities affiliated with the individuals named within this affidavit which include: Full Exposure LLC, QG Autos LLC, Quagmire Global LLC, Jaes Jewelers LLC and Spendrupfan LLC;

h.   Any records relating to individuals that are/were in a romantic relationship with individuals utilizing the usernames contained in Attachment A;

i.   Any records and information related to financial transactions attempted and/or conducted, including but not limited to any and all financial and accounting records, electronic payment transfers, wire transfers, deposits, withdrawals, electronic money transfer applications, cashier's checks, certified funds payments, money order services, safe deposit keys, records of income, payments, expenditures, W-2s, 1099s, other IRS, federal, state or local tax records, payroll records, and similar documents;

j.   Any records related to the Town of Erie, Colorado and Sema Construction;

k.   Records and information relating to the names, addresses, telephone numbers, e-mail addresses, social media accounts and any other user profile of perpetrators, aiders and abettors, and co-conspirators in a conspiracy to defraud individuals;

l.   Any records and information relating to the use or attempted use of online dating websites or online relationship platforms, to include but not limited to Zoosk;

m.   Any records and information relating to the use or initiation of e-mail accounts, electronic messaging accounts, telephone numbers, and other forms of electronic or digital communication;

n.   Any records and information relating to online and/or electronic accounts utilized to induce and/or request financial transactions;

o.      Any records pertaining to the means and source of payment for services connected to the TextNow accounts (including any credit card or bank account number or digital money transfer account information);

p.      Evidence that may identify any co-conspirators or aiders and abettors, including records that help reveal their whereabouts.


This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH
TEXTNOW ACCOUNTS:

  (1)  garygivens001
  (2)  johnsebastian1759

THAT ARE STORED AT PREMISES
CONTROLLED BY TEXTNOW, INC.
LOCATED AT 2710 GATEWAY OAKS
DRIVE, SUITE 150N, SACREMENTO, CA
95833.

Case No. _____

**Filed Under Restriction**

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, John P. McGrath being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant for information associated with certain TextNow accounts that are stored at premises owned, maintained, controlled, or operated by TextNow, Inc. ("TextNow"), a wireless service provider headquartered at 420 Wes Graham Way, 2nd Floor, Waterloo, Ontario N2L 0J6, Canada with an office located at 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833 that accepts legal process from the United States Government. The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require TextNow to disclose to the government records and other information in its possession, pertaining to the subscribers or customers associated with the account numbers.

2.      I am a Special Agent with the Federal Bureau of Investigation (FBI), and have been since August 2010. I'm currently assigned to the FBI Denver, Fort Collins Resident Agency (FCRA) where I have been assigned to investigations dealing with fraud and complex financial crimes. Prior to my assignment at FBI FCRA I was assigned to investigations dealing with corruption of federal, state and local public officials, fraud against the government, drug trafficking organizations, violent street gangs, transnational criminal enterprises and financial institutional fraud. I have participated in court-authorized interceptions of wire communications and have served as both an affiant and a monitor of those interceptions. During my ten (10) years of experience as a law enforcement officer, I have become familiar with the investigative methods and enforcement of federal criminal violations. Based upon this experience, I have also become well versed in the methodology utilized in criminal conspiracies and activities. Additionally, I have arrested numerous individuals for various criminal violations and have spoken with numerous individuals regarding their criminal activities conducted and facilitated through both written and non-written communications. I have authored multiple search warrant affidavits related to the search of communications and more specifically electronic communications such as email addresses and cloud-based user accounts.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.  This affidavit is intended to show simply that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on the facts as set forth in this affidavit, there is probable cause to believe that the premises and related information described in Attachment A contains evidence, instrumentalities, and/or fruits of violations of Title 18 United States Code Sections 371

2

(conspiracy), 1343 (wire fraud) and 1956 (money laundering), as further described in the items sought to be seized in Attachment B.

## JURISDICTION

5.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i). As discussed more fully below, acts or omissions in furtherance of the offenses under investigation occurred within Colorado.

## PROBABLE CAUSE

### Overview of TextNow Accounts Sought to be Searched and the Accounts' Connections to Criminal Aliases Involved in the Offenses Under Investigation

6.      This affidavit seeks permission to search two TextNow accounts which are further discussed and identified in detail below.  Based on information produced by TextNow in response to subpoenas, the following criminal alias is associated with the two respective TextNow Accounts for which information is sought:

| TextNow Account Identifier | Person Associated with TextNow Account |
| --- | --- |
| (1)  garygivens001 | Alias:  Andrew Hansen |
| (2)  johnsebastian1759 | Alias:  Andrew Hansen |

7.      I have determined during my investigation as detailed below, that an unknown individual, using the alias name "Andrew Hansen", participated in and/or worked with others in the criminal offenses under investigation, namely, conspiracy, wire fraud and money laundering. The specific details of the activity of the above individual and use of the two TextNow accounts is explained below.

3

**Colorado Company SEMA Construction Inc.**
**Email Compromise and Fraudulently Induced Wire Transfer Payment**

8.      In early November of 2019, I began participating in an investigation initiated by the Erie Police Department which involved the theft of approximately $1 million from the Town of Erie ("Erie"), Colorado.  The nature of the fraud involved a business email compromise scheme during which an Erie employee (who worked in the town's accounting department) was unwittingly duped into making two ACH transfers to a bank account in Florida at the direction of unknown individual(s) intending to commit fraud.   Specifically, on October 25, 2019, Erie processed payments that resulted in two ACH payments in the amounts of $615,846.55 and $400,387.25 to a Citibank account in Florida.

9.      At the time of the ACH transfers, the Erie accounting employee was fraudulently misled into believing that Erie was paying SEMA Construction Inc. ("SEMA") for construction work it had completed on behalf of Erie.   SEMA was a construction company located in Centennial, Colorado, which was owed funds by Erie.  To date, Erie has never recovered the funds it mistakenly paid.

10.     In connection with the investigation, law enforcement questioned employees with SEMA and learned that SEMA had itself been the victim of an email compromise fraud scheme. Based upon the interviews of SEMA employees your affiant learned that a SEMA employee's email profile (Employee 1) was compromised on two known occasions. According to Employee 1, an unknown subject, exchanged emails with a SEMA accounts clerk (Employee 2) and requested that Employee 2 facilitate an outgoing payment to a SEMA vendor. The unknown subject, using Employee 1's email, provided Employee 2 with an invoice dated 9/27/19, in the amount of $122,760 and payable to a vendor referred to as L.B. LLC ("LB LLC"). Shortly after

4

receiving the fraudulent invoice and believing the payment request was legitimate, SEMA initiated an outgoing wire transfer in the amount of $122,760 payable to the account documented within the fraudulent LB LLC invoice. Shortly after issuing the payment SEMA realized the LB LLC invoice was fraudulent and the funds were eventually returned to SEMA.

11.     Based upon a review of financial records law enforcement conducted an interview the sole signer of the LB LLC bank account, hereinafter referred to as L.B. ("LB") in June 2020. LB stated that she began an online relationship with an unknown subject utilizing the alias CHRISTINA MONTEE in 2019 and eventually became victim to an online romance scam in which fraudulent funds were deposited into her bank account. As part of the scam MONTEE requested and LB later agreed to have a $122,760 deposit, the SEMA payment to LB LLC, into LB's personal bank account. LB believed the funds to be legitimately MONTEE's and not related to a fraud or email compromise. Shortly after the deposit was made, MONTEE asked and LB ultimately obtained a $61,500 certified check made payable FULL EXPOSURE LLC. At MONTEE's direction, LB deposited the check into FULL EXPOSURE LLC's Chase bank account located in Utah around 9/30/2019.

**Full Exposure LLC and the Kosins**

12.     Based upon the SEMA compromise and attempted fraud, further investigation was conducted of FULL EXPOSURE LLC.  According to the State of Utah Division of Corporations, FULL EXPOSURE LLC (FULL EXPOSURE) is a business with an address at 50 West. Broadway Suite 333 #74820, Salt Lake City, Utah 84101. The business was registered with the State of Utah on April 16, 2019.

5

13.     According to federal grand jury subpoena production records obtained from Chase bank, ABRIELE JORDYN KOSIN (ABRIELE) was the sole signer for two FULL EXPOSURE business accounts, account numbers ending in 3581 and 1597, with a business title of "member" and address of 7845 S. Candlestick Lane, Apartment 5305, Midvale, Utah 84047. Both accounts were opened on May 4, 2019 by ABRIELE. ABRIELE's telephone number was listed as being (208) 520-0715. Based on Chase records FULL EXPOSURE's business description and services provided as being "photograph advertising portfolios for salon businesses and individuals" with a telephone number of (208) 716-4539. A note placed within the two FULL EXPOSURE signature cards dated May 4, 2019, designated DARO KOSIN (DARO) as a "signer(s) to be added later." Around January 9, 2020, Chase compliance requested the closure of FULL EXPOSURE account on March 8, 2020 and noted that no new accounts could be opened.

14.     ABRIELE also held a personal checking account at Chase, account number ending in 9026. ABRIELE was the sole signer and opened the account on January 20, 2019. The account was closed by Chase compliance around October 15, 2019.

15.     According to federal grand jury subpoena production records obtained from Wells Fargo Bank, ABRIELE held a personal checking account, account number ending in 0545 and a FULL EXPOSURE business checking account, account number ending in 4993. ABRIELE was the sole signer for both her personal and the FULL EXPOSURE accounts. ABRIELE opened her personal account on December 22, 2018 and the FULL EXPOSURE account on May 4, 2019. ABRIELE's personal account was closed by Wells Fargo around November 29, 2019 and the FULL EXPOSURE account was closed on November 14, 2019.

16.    At the time she opened her personal account, ABRIELE provided Wells Fargo with a residential address of 7845 S. Candlestick Lane, Apartment 5305, Midvale, Utah 84047 and her current employer as Intermountain Health Care. According to account opening documents, FULL EXPOSURE was established on April 16, 2019, business industry was "Information/Media" and the description of business was provided as "media advertising."

17.    According to a law enforcement interview of ABRIELE on March 12, 2020, at her residence located at 4939 South Lake Pines Drive, Apartment 8C, Murray, Utah. ABRIELE stated that she is married to DARO, a Nigerian citizen, and that they both had previously operated FULL EXPOSURE. ABRIELE claimed FULL EXPOSURE was a media marketing company and indicated that it was no longer an active company. According to ABRIELE, FULL EXPOSURE maintained an address in a downtown Salt Lake City office building to receive mail, but never had an office physically located there. ABRIELE and DARO recently moved into their current apartment and agreed to a one year lease. ABRIELE and DARO met while attending college at Brigham Young University- Idaho.

18.    Based upon a May 2020 immigration query, DARO was not in the United States legally.

19.    Based on records obtained from KeyBank, DARO opened a bank account ending in 4433 in May 2017. DARO listed his date of birth as July 26, 1997, and place of employment as "BYUI Student," which law enforcement interprets to mean that DARO was a student at Brigham Young University- Idaho. On February 8, 2019, DARO deposited a $72,000.68 check into his 4433 account. Later on February 12, 2019, Keybank withdrew the funds from DARO's account as a chargeback, as a result of the check being counterfeit. According to Keybank the counterfeit check did not consist of a check number nor listed maker information and was drawn

from a frozen account. On February 13, 2019, Keybank interviewed DARO, in which DARO claimed that he received the check from an individual that was purchasing land from DARO, which was located in Nigeria.  Also on February 13, 2019, DARO completed a Keybank affidavit in which he stated his telephone number as being (208) 716-4539. As a result of Keybank's investigation they closed DARO's 4433 account on February 22, 2019.

20.    Based upon a review of the Chase records, approximately thirty-four cash deposits totaling in excess of $104,000 were deposited into ABRIELE's checking account and /or the two FULL EXPOSURE accounts [Wells Fargo Full Exposure #4993 included] from January 2019 through December 2019.

21.    Based on a review of the ABRIELE and the FULL EXPSOURE Chase accounts she obtained three payments in 2019 that law enforcement believes to be related to her employment. Two payments were made by The Fountain Group totaling approximately $1,703.85 and one payment from Great Resort Vacations LLP for approximately $183.40.

22.    A State of Utah Department of Labor query for ABRIELE confirmed employment records in 2019 and/or 2020 for The Fountain Group and Great Resort Vacations LLP. A State of Utah Department of Labor query for DARO revealed that DARO did not receive wages in 2019 nor early 2020 from any employer. Neither ABRIELE nor DARO had any State of Utah employment or wage records affiliated with FULL EXPOSURE.

23.    Based on my review of bank records relating to FULL EXPOSURE, ABRIELE and DARO, I noted various financial transactions connected to three other individuals identified as Ayodele Fasanya, Abedayo Fasanya, and Usman Salawu.  Based on further review of additional banking, financial, public and IPhone records, I also determined that these three other individuals facilitated the transfer of funds connected to the schemes under investigation.   In

8

addition, I determined that Abedayo Fasanya utilized two other businesses in the course of his financial activities, namely, Jaes Jewelers, LLC and Spendrupfan, LLC.    Further, I determined that Adedayo Fasanya utilized multiple aliases when communicating with others including the alias names, James Morris, James Lawson, James Vlaar.  Finally, based on my review of the above described records, I also determined that Usman Salawu controlled two businesses identified as QG Autos LLC, and Quagmire Global LLC, whose connected bank accounts were utilized for various financial transactions during the course of the schemes under investigation.

### Andrew Hansen Romance Fraud Facilitated through the Use of Textnow Assigned Telephone Numbers

24.    On September 19, 2019, one $10,000 incoming wire transfer was deposited into FULL EXPOSURE account 3581 from M.V. ("MV"). The wire transfer consisted of a note that stated "For Andy." Later on September 19, 2019 and continuing through September 23, 2019, three outgoing payments totaling $1,490 were made to ABRIELE via Zelle. On September 23, 2019, one outgoing wire transfer in the amount of $7,475 was transferred into QGAUTOS Synovus bank account number 7598.  On September 25, 2019 a $7,207 withdrawal was made from the QGAGUTOS Synovus account.

25.    Based upon a July 2020 law enforcement interview of MV, MV stated that the $10,000 wire transfer payment was for Andrew Hansen, whom MV met on an online dating website around June 2019. To date MV has never met Hansen in person nor conducted a video conference, such as Facetime or Skype, with Hansen to corroborate his alleged identity. Hansen claimed that customs authorities in England seized solar panels that were shipped from China on behalf of Hansen's business. Hansen asked and MV agreed to pay a customs fine so that Hansen could take possession the solar panels. Hansen directed MV to wire the funds to the FULL

EXPOSURE bank account located in Utah. Hansen claimed that the FULL EXPOSURE account belonged to the England based customs official responsible for releasing the solar panels.

26.     During their communications Hansen provided MV with a photograph of a United States passport claiming to belong to him. Based upon a United States Department of State review of the passport number, law enforcement was able to determine that Hansen's passport was fraudulent. Based upon the nature of their relationship, conversations, information provided to MV and utilization of the FULL EXPOSURE account, law enforcement believes that Hansen is an online alias being utilized to fraudulently obtain money from MV and possibly others.

27.     In July 2020 MV was served with a subpoena for her communications with Hansen. Later in August 2020 MV produced text message and electronic communications with Hansen, in which Hansen utilized telephone numbers 404-484-7411 and 408-708-2976, both of which were associated with TextNow accounts. A review of those electronic communications corroborated an online romantic relationship between MV and Hansen.

28.     A review of TextNow records for 404-484-7411 revealed a username of garygivens001 that was registered on April 17, 2020. Those records corroborated contacts with telephone numbers belonging to MV.

29.     A review of TextNow records for 408-708-2976 revealed a username of johnsebastian1759 that was registered on August 12, 2020. Those records corroborated contacts with telephone numbers belonging to MV.

30.     Later in October 2020 law enforcement interviewed MV again, in which MV acknowledged that she had been a victim of an online romance scheme and estimated that she had made financial transfers in excess of $100,000 on behalf of Hansen. Based upon recent events to include MV's bank restricting her access to her account(s) and driving by an address

claimed to be owned by Hansen that was located in Stockton, California, MV determined that she held an online relationship with an individual utilizing an alias to conceal a fraud scheme in which she was a victim.

31.     Based on the forgoing law enforcement believes that TextNow usernames garygivens001 and johnsebastian1759 were used by alias Andrew Hansen to defraud MV and that those usernames and accounts may likely utilized other TextNow telephone numbers to victimize and defraud others.

32.     Based upon the forgoing law enforcement believes that the TextNow account identifiers provided in Attachment A, were utilized to either fraudulently open bank accounts to facilitate money laundering amongst known co-conspirators and/or to communicate with a victim(s) of an online romance and fraud schemes. Proceeds of the online romance and fraud schemes were eventually transferred into accounts controlled by identified co-conspirators described within this affidavit.

## PRESERVATION REQUEST

33.     The FBI submitted a preservation request to TextNow on October 16, 2020 and November 19, 2020**.** According to TextNow's Law Enforcement User Guide, TextNow retains call logs and messages logs, to include content of electronic communications for a period of approximately two years.

## INFORMATION REGARDING TEXTNOW

34.     In my training and experience, I have learned that TextNow provides, communication services to the general public that is available for download on various devices. Users of TextNow are assigned a unique username and 10-digit phone number, which they can use to communicate through voice calls, text messages, picture messages, and voicemail. This

communication is accomplished using the internet. The application can be downloaded to, and used from a computer, smartphone, tablet, or other electronic device. Stored electronic communications, including retrieved and un-retrieved voicemail, text, and multimedia messages for TextNow users may be located on the computers of TextNow. Further, I am aware that computers located at TextNow contain information and other stored electronic communications belonging to unrelated third parties.

35.     TextNow has multiple levels of service which users are able to sign up for a free or paid TextNow account and register to have a telephone number with a Canadian or United States area code. TextNow has a variety of user types that have access to talk and text services, but only users in the United States have access to nationwide talk and text services that utilizes the Sprint Network Data Network to connect cellular telephone transactions, thus acting as a wireless phone provider.

36.     Wireless phone providers often provide their subscribers with voicemail services. In general, a provider will store voicemail messages on behalf of a particular subscriber until the subscriber deletes the voicemail. If the subscriber does not delete the message, the message may remain in the system of TextNow for years.

37.     Among the services commonly offered by wireless phone providers is the capacity to send short text or multimedia messages (photos, audio, or video) from one subscriber's phone or wireless device to another phone or wireless device via one or more wireless providers. This service is often referred to as "short message service" (SMS) or "multimedia messaging service" (MMS), and is often referred to generically as "text messaging". Based on my knowledge and experience, I believe that stored electronic communications,

including SMS and MMS messages that have been sent or received by subscribers, maybe stored by TextNow for short periods incident to and following their transmission.

38.     Wireless providers typically retain certain transactional information about the use of each telephone number, text messaging, and voicemail account on their systems. This information can include log files and messaging logs showing all activity on the account, such as local and long distance telephone connection records, records of session times and durations, list of all incoming and outgoing telephone numbers or email addresses associated with particular telephone calls, voicemail messages, and text or multimedia messages. Providers may also have information about the dates, times, and methods of connecting associated with every communication in which a particular devices was involved.

39.     Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages. A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received. The provider could have this information because each cellular devices has one or more unique identifiers embedded inside it. Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an electronic serial number (ESN), a mobile electronic identity number (MEIN), a mobile identification number (MIN), a subscriber identity module (SIM), an international mobile subscriber identifier (IMSI), or an international mobile station equipment identity (IMEI). When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers as a matter of course.

13

40.     Many wireless providers retain information about the location in which a particular communications was transmitted or received. This information can include data about which "cell towers" (i.e., antenna towers covering specific geographic areas) received a radio signal from the cellular device and thereby transmitted or received the communication in question.

41.     Wireless providers also maintain business records and subscriber information for particular accounts. This information could include the subscribers' full names and addresses, the address to which any equipment was shipped, the date on which the account was opened, the length of service, the types of services utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscribers' Social Security Numbers and dates of birth, all telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscribers. In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing digits dialed). The providers may also have payment information for the account, including the dates, times, and the internet protocol (IP) address of the connected device through with the payment is being made (including any credit card or bank account number).

42.     In some cases, subscribers may communicate directly with a service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Service providers typically retain records about such communications, including records of contacts between the user and the service provider's support services, as well as records of any actions taken by the service provider or user as a result of the communications.

14

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

43.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require TextNow to disclose to the government copies of the records and other information (including the content of communications and stored data) particularly described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

44.     Based on the forgoing, I submit that this affidavit supports probable cause for a warrant to search the premises and related information described in Attachment A for purposes of  seizing the items described in Attachment B.  Therefore, I request that the Court issue the proposed search warrant. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

45.     The government will execute this warrant by serving the warrant on TextNow, Inc.  Because the warrant will be served on TextNow, Inc, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## REQUEST FOR RESTRICTION, NON-DISCLOSURE TO SUBSCRIBERS AND REQUEST TO KEEP ACCOUNTS ACTIVE

46.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be restricted until further order of the Court.  These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.  Accordingly, there is good cause to restrict these documents because their premature disclosure may seriously jeopardize that investigation.  Specifically, if the targets prematurely learned of the FBI's investigation, some of them may attempt to destroy, delete or otherwise remove evidence located on various accounts or cloud based storage systems which agents have yet to identify.  Similarly, some of the targets may attempt to obstruct justice and intimate witnesses by influencing such witnesses to not cooperate with federal agents should the investigation be revealed at this time.  Finally, some targets may also attempt to flee the United States to their home countries in the event this affidavit and connected search warrant were made public at this time.

47.     I am also aware that TextNow, Inc may disclose to their customers and subscribers that law enforcement has requested a search warrant for a respective account. Therefore, I am requesting that the Court order that TextNow, Inc not disclosure the existence of this affidavit and warrant to its customers and subscribers connected to the TextNow accounts sought.

48.     Lastly, I am aware that TextNow, Inc will sometimes shut down accounts that are the subject of ongoing investigations once they receive warrants, court orders, or subpoenas. Even without disclosing the nature of the investigative process that it has received, if TextNow,

Inc takes such action, it will alert the targets that an investigation is ongoing.  This could result in the same consequences as outlined above.  So as not to alert the targets of the ongoing investigation, I am requesting that the Court order that the TextNow, Inc not shut down the accounts in issue or otherwise take any adverse action against such accounts.

Respectfully submitted,

*s/John P. McGrath*

John P. McGrath
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on   December 18                    , 2020.

HON. S. KATO CREWS
UNITED STATES MAGISTRATE JUDGE

This Application and Affidavit was reviewed and is submitted by AUSA Tim Neff.